# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 06 C 210 |
| ANCHOR MORTGAGE CORP. ) and JOHN MUNSON, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States has sued Anchor Mortgage Corp. and John Munson, its former president, under the False Claims Act. It alleges that Anchor fraudulently procured HUD-insured mortgages on thirteen properties. Eleven of them went into default, leading to foreclosure, transfer of title to HUD, and submission of insurance claims. The insured lender on the other two properties allowed the defaulting borrowers to sell the properties for less than the amount due, and insurance claims were presented to HUD for the difference.

Alfredo Busano, an employee of Anchor and the manager of its Elgin, Illinois branch office, entered a guilty plea to a charge of mail fraud. In his plea agreement, Busano admitted that he processed mortgage loan applications that he knew included material false information regarding the source of funds the purchasers were using for their down payments. Busano also admitted that he and Anchor received fees and commissions for processing the loans. He identified fourteen properties in Poplar

Grove, Illinois on which fraudulently-obtained mortgage loans had been made.  *See* Pl. Ex. C.

## Prior rulings

The Court begins by recounting its recent unpublished ruling that vacated certain earlier rulings in the case.

This case, which was filed in January 2006, was originally assigned to Judge James Moran.  In 2007, the government moved for judgment on the pleadings, seeking a judgment in the amount of approximately $2 million.  The government argued that Busano's guilty plea estopped Anchor from denying liability, by operation of a provision of the False Claims Act, 31 U.S.C. § 3731(e).  Section 3731(e) reads as follows:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

18 U.S.C. § 3731(e).  Anchor argued that the government was misreading section 3731(e).  The dispute largely concerned the meaning of the term "the defendant" in the statute.  The government argued that it referred to the defendant in the civil False Claims Act case, even if this was a different person or entity from the defendant found guilty in the related criminal case.  Anchor argued that the term referred only to the defendant in the criminal case.

In June 2007, Judge Moran issued a brief decision in which he noted the near-absence of any prior decisions addressing the point and then concluded, for reasons he

2

described, that the statute meant what the government argued. He concluded that "Anchor cannot . . . deny the essential elements of the criminal offense and those elements impose liability upon Anchor," even though Anchor had not been a party to Busano's criminal case. *United States v. Anchor Mtg. Corp.*, 503 F. Supp. 2d 959, 960-61 (N.D. Ill. 2007). Judge Moran declined to enter judgment, however, because Anchor had raised a statute of limitations defense. *Id.* at 961. The defendants moved for reconsideration, but Judge Moran denied that motion in September 2007. *United States v. Anchor Mtg. Corp.*, No. 06 C 210, 2007 WL 4919561 (N.D. Ill. Sept. 4, 2007).

Discovery ensued, as well as a period during which Judge Moran was seriously ill and his day-to-day court call was being supervised by other judges. In January 2009, Judge Robert Dow issued a decision in a different case in which he reached the opposite conclusion from Judge Moran regarding the construction of section 3731(e). *See United States v. Dolphin Mtg. Corp.*, No. 06 C 499, 2009 WL 153190 (N.D. Ill. Jan. 22, 2009). Defendants in the present case then asked Judge Moran to certify the question he had decided back in 2007 for interlocutory appeal under 28 U.S.C. § 1292(b). Judge Moran denied that motion in April 2009, just before his unfortunate death. *United States v. Anchor Mtg. Corp.*, No. 06 C 210, 2009 WL 1034562 (N.D. Ill. Apr. 14, 2009). The case was reassigned to the undersigned judge's call a little over a week later, on April 23, 2009.

In early September 2009, the United States moved for entry of summary judgment on the issue of damages. It argued, essentially, that as a result of the earlier ruling by Judge Moran regarding liability, the defendants were liable for civil penalties of

3

$71,500 plus damages of $3,265,237, consisting of the "actual damages" from the mortgage loans that had been the subject of the motion for judgment on the pleadings, plus trebling under the False Claims Act, less offsets for money paid and recovered.  In response to the motion, defendants argued, among other things, that Judge Moran's June 2007 order was erroneous and violated their due process right to be heard because they had no opportunity to contest matters purportedly determined in Busano's criminal case.

The Court vacated Judge Moran's liability ruling.  The Court noted that it was "cognizant of the prudential limitations imposed on a judge who inherits a case in which another judge has made a substantive ruling." Order of Feb. 16, 2010 (citing *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010)).  Specifically, "[t]he successor judge should depart from the transferor judge's decision only if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *Gilbert*, 591 F.3d at 902 (internal quotation marks and citation omitted).  This Court stated that it had carefully considered the matter and concluded that it "does, in fact, have a strong conviction, which it believes is reasonable, that Judge Dow's analysis of section 3731(d) [sic] is correct, and that the June 2007 ruling in the present case is erroneous." Order of Feb. 16, 2010.  The Court stated that it did not believe

> that rescinding that ruling would cause undue harm to the government. Rescinding the ruling would, to be sure, require further discovery and proceedings in this case, but the Court can perceive no unfair or undue harm.  On the other side of the ledger, were the Court to proceed ahead based on a ruling that it is convinced is incorrect, it would essentially be foisting the matter onto the Court of Appeals, which if it agreed with this Court would remand the case for still more proceedings.  The Court

4

> believes that the better course is to correct the error now and conclude
> the case based on what it perceives to be a correct view of the law.

*Id.*

As it turned out, the Court's order did not engender further discovery; both sides reported to the Court that they were prepared to move ahead on the record as it stood. The government has now moved for entry of summary judgment.

## Discussion

The government begins its motion by repeating its previous argument that Busano's guilty plea estops Anchor from denying liability. Pl. Mem. at 4. The Court again rejects that argument for the reasons previously stated.

The government also argues that section 3731(e) aside, Anchor is vicariously liable for Busano's conduct. The government relies on its prior summary judgment submission to establish the amount of damages it asks the Court to award. In response, Anchor argues that Busano's guilty plea is inadmissible hearsay and that in any event, the plea does not establish Anchor's knowledge of the false claims. Anchor also argues that other evidence contradicts the statements in Busano's guilty plea, requiring a trial to resolve the disputes.

**1.  Vicarious liability**

In a fraud case, a principal is liable for fraud on a third person committed by the principal's agent acting with actual or apparent authority. *See United States v. One Parcel of Land*, 965 F.2d 311, 319 (7th Cir. 1992). Actual authority is considered to exist, and thus the agent's fraudulent intent is imputed to the principal, if the agent acts within the scope of his delegated authority and at least in part with the intent to benefit

5

the employer.  *Id.* at 316-17.

Even if the agent acts entirely for his own purposes and the principal does not benefit, the principal may be held liable for the agent's fraud if the agent has apparent authority.  In such a case, "[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.'"  *Id.* at 319 (quoting Restatement (Second) of Agency § 261, cmt. a).  "'An agent acts with apparent authority with regard to a third party when the third party reasonably believes that the agent . . . has authority to act on behalf of the principal and that belief is traceable to manifestations made by the principal."  *Dolphin Mtg.*, 2009 WL 153190, at *14 (quoting Restatement (Third) of Agency § 7.08 cmt. b.).

As Judge Dow noted in the *Dolphin Mortgage* case, "[c]ourts routinely have applied these concepts in the FCA context."  *Id.* at *12 (citing *United States ex rel. McCarthy v. Straub Clinic and Hosp., Inc.*, 140 F. Supp. 2d 1062 (D. Haw. 2001) (collecting cases)).  Thus if Busano committed fraud while acting with actual or apparent authority from Anchor, Anchor is liable under the False Claims Act.

**2.     Effect of Busano's guilty plea**

Busano pled guilty to count one of the indictment against him, a charge of mail fraud under 18 U.S.C. § 1341.  This count of the indictment alleged that from December 1996 through August 1999, Busano devised and participated in a scheme to defraud and to obtain money and property from HUD and Anchor Mortgage by means of

6

materially false and fraudulent representations, knowing at the time that the representations were false, and that he caused the mail to be used to carry out the scheme on November 28, 1998. Pl. Ex. C ¶ 5.

Anchor argues that Busano's guilty plea is inadmissible hearsay. There is no question that Busano's guilty plea and his plea agreement are hearsay; the government offers Busano's admissions to prove the truth of what he admitted. *See* Fed. R. Evid. 801(c) (definition of hearsay). That does not mean, however, that the plea is inadmissible. The government relies on Federal Rule of Evidence 803(22), which provides in relevant part that the following is not excluded by the hearsay rule:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment . . . .

Fed. R. Evid. 803(22).

By the plain language of Rule 803(22), the judgment of conviction against Busano is admissible. But the fact that Busano was convicted of mail fraud by itself gets the government nowhere. The real question is what facts were "essential to sustain the judgment" against Busano – that is all that Rule 803(22) covers – or, more particularly, whether all of Busano's admissions in his plea agreement are admissible in this case.

The Seventh Circuit has ruled that admissions in a plea agreement may be admissible under Rule 803(22). *See Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995). The government appears to consider *Scholes* as authority for the proposition that *every* admission in a plea agreement is admissible. This, in the Court's view, goes

too far.  The decision in *Scholes* does not clearly delineate what is and is not admissible under Rule 803(22), but there is no reason to think that the court departed from the Rule's express requirement that to be admissible, the facts in a plea agreement must be "essential to sustain the judgment" in the criminal case.

What is essential in a mail fraud case is the existence of a scheme to defraud, the defendant's knowing participation in it, his intent to defraud the victim or to obtain the victim's money or property, and his use of the mail to carry out the scheme.  *See* 7th Cir. Pattern Crim. Instr. at 214.  What this means is that in this case, Busano's conviction gets the government a good deal of the way to establishing liability, but not all the way there.  There are at least two things that are lacking.  First, as indicated earlier, to show that Busano acted with Anchor's actual authority, the government must prove that he acted in part to benefit Anchor.  The fact that Anchor earned fees from the fraudulent transactions in which Busano engaged may well be sufficient to establish that.  But Anchor's receipt of fees, though mentioned in the factual basis section of Busano's plea agreement, was in no way necessary to the judgment of conviction against Busano.  Second, the proposition that the thirteen particular transactions cited in the government's complaint in this case were all fraudulent was likewise unnecessary to Busano's conviction.  Thus the admissions in his plea agreement are inadmissible under Rule 803(22) to establish those propositions.

The government cites no other evidence on these points; it relies solely on Busano's guilty plea and his plea agreement.  It has thus failed to establish its entitlement to summary judgment.

**Conclusion**

For the reasons stated above, the Court denies plaintiff's motion for summary judgment. The case is set for a bench trial on Friday, July 9, 2010 at 9:30 a.m. If the trial is not completed on that date, it will resume on Friday, July 23, 2010 at 9:30 a.m. The Court sets the case for a status hearing on May 17, 2010 at 9:30 a.m. for the purpose of setting a due date for the final pretrial order.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 10, 2010